CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 1 2 2008

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

COMBINED INSURANCE )
COMPANY OF AMERICA, )
                   )       Civil Action No. 7:08CV00218
        Plaintiff, )
                   )       **MEMORANDUM OPINION**
v. )
                   )       By: Hon. Glen E. Conrad
BERNARD P. WIEST, JR., )       United States District Judge
                   )
        Defendant. )

Combined Insurance Company of America ("Combined") filed this diversity action

against one of its former employees, Bernard P. Wiest, Jr., asserting claims for breach of

contract, tortious interference with contractual and/or prospective business relations, breach of

fiduciary duties, misappropriation of trade secrets, and conversion. The case is presently before

the court on the defendant's motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal

Rules of Civil Procedure. For the following reasons, the defendant's motion will be denied.

### Factual and Procedural Background

Combined is an international insurance corporation, based in Illinois, that specializes in

supplemental insurance. Wiest, a Virginia resident, was employed by Combined from June of

1986 to September of 2007. In June of 2005, the defendant transferred from Pennsylvania to

Virginia for a sub-regional manager position with Combined, and in January of 2007, the

defendant was promoted to regional manager. As a regional manager, the defendant's duties

included overseeing district managers, sales managers, and sales agents within his region;

training sales managers and sales agents; maintaining current policyholders and expanding the

customer base; supervising the assignment of work within the region; and reporting sales and

marketing information.

The defendant's employment with Combined was subject to a June 13, 2005 employment contract ("Contract," Compl. Ex. A). Under the Contract, the defendant was responsible for performing his job duties within the sales territory designated in an attached territory schedule, which listed approximately 30 counties in Virginia.

The Contract required the defendant to "devote best efforts, fidelity, and loyalty [ ] full time to the promotion of the business of [Combined]." (Contract para. 1). It prohibited the defendant, during his employment, from "(1) becom[ing] employed by or represent[ing] any other insurance company, any insurance agency, or any other business or enterprise or (2) be[ing] instrumental in causing others to place any accidental or health or life insurance business through any other insurance company or insurance agency." (Contract para. 1).

The Contract required Wiest, upon his termination from Combined, to return all confidential or proprietary documents and information provided during the course of his employment, and to refrain from retaining any copies thereof. (Contract para. 5). The Contract also contained provisions restricting the use of Combined's confidential information. Pursuant to paragraph 6(a), the defendant recognized the confidential, proprietary, and trade secret nature of the information provided to him during his employment, and agreed that he would not use such information "in competition against any of the Combined Companies either during the term of this Agreement or any time after the termination hereof." (Contract para. 6(a)). In paragraph 4, the defendant agreed that all materials given to him or made available to him by Combined during his employment were owned by Combined.

The Contract also contained several covenants restricting the defendant's ability to solicit Combined's clients and employees. Pursuant to paragraph 7(a), the defendant agreed to refrain

from soliciting the insurance business of Combined's policyholders within his designated sales

territory for two years following the termination of his employment:

> For a period of two years after termination of employment the
> Executive covenants and agrees not to, alone or in combination
> with others, in the geographical areas for which the Executive has
> been responsible, in any way directly or indirectly (1) sell; or
> attempt to sell, or cause others to sell or attempt to sell, any form of
> accident or health insurance issued by any other company to or on
> any of the Company's policyholders, or (2) sell, or attempt to sell,
> or cause others to sell or attempt to sell, any form of life insurance
> issued by any other company to or on any of the Company's
> policyholders, or (3) engage in (or cause, encourage or assist
> anyone else to engage in) any activity of selling accident, health or
> life insurance which has the effect of singling out or which has the
> effect of being particularly directed at the policyholders on the
> Company as distinguished from other members of the general
> public; provided, however, that the restrictions in this Paragraph
> (7)(a) shall apply only with respect to any geographic areas for
> which the Executive has been responsible during the two year
> period before the date the Executive's employment terminates.

(Contract para. 7(a)). The defendant also agreed that during the two-year period following the

termination of his employment, "with respect to any geographic areas for which the Executive

has been responsible during the two year period before the Executive's employment terminates,"

he would not "directly or indirectly, induce or attempt to induce or cause, encourage or assist

anyone else to induce or attempt to induce, any policyholder of the Company to cancel, lapse or

fail to renew any insurance policies issued by the Company." (Contract para. 7(b)).

Additionally, pursuant to paragraph 7(c), the defendant agreed to refrain from recruiting

employees under similar circumstances:

> For a period of two years after termination of employment, the
> Executive covenants and agrees not to, alone or in combination
> with others, in the geographical areas for which the Executive has
> been responsible, in any way directly or indirectly, induce or
> attempt to induce or cause, encourage or assist anyone else to

3

induce or attempt to induce, any sales agent of any kind or any sales employee of any kind of the Company to terminate a relationship with the Company or to sell for or become employed by any other insurance company or insurance agency; provided, however, that the restrictions in this Paragraph (7)(c) shall apply only with respect to any geographical areas for which the Executive has been responsible during the two year period before the date the Executive's employment terminates.

(Contract para. 7(c)).

The defendant served as a sub-regional or regional manager for Combined from June of 2005 to September of 2007. Combined alleges that during this period of employment, the company furnished the defendant with confidential and proprietary information pertaining to its policyholders, employees, and agents for the defendant to use in the exercise of his job duties. Combined alleges that the defendant also received confidential and proprietary information pertaining to the company's former employees and agents to be used in recruiting them back to Combined.

Combined alleges that in August or September of 2007, the defendant decided that he no longer wanted to work for the company, and that he instead wanted to work for Family Heritage Life Insurance Company of America ("Family Heritage"), a smaller company that sells supplemental insurance policies in direct competition with Combined. Combined alleges that rather than immediately resigning, the defendant planned to continue his employment with Combined, so that he could recruit its employees and agents, and solicit its policyholders, on behalf of Family Heritage. Combined further alleges that the defendant planned to misappropriate the company's confidential and proprietary information in order to use that information to further Family Heritage's business.

4

Combined alleges that in August and September of 2007, while still employed with Combined, the defendant began to recruit his Combined colleagues to work for Family Heritage, and that he criticized and disparaged Combined. Combined further alleges that several agents from the defendant's former district in Pennsylvania and other areas subsequently ceased employment with Combined and began working with Family Heritage at the defendant's request.

In September of 2007, the defendant advised Combined that he would be resigning from the company on September 14, 2007. Combined alleges that unbeknownst to the company, the defendant was appointed with Family Heritage on September 5, 2007, while he was still employed by Combined.[1]

Combined alleges that on September 13, 2007, the day before the defendant's employment with the company was terminated, Combined emailed a confidential and proprietary list to members of its upper management containing the names of former employees that had been targeted for rehire, along with confidential strategic materials, including a script of potential dialogue and rules to be used in rehiring the prospects. Because the defendant was still a Combined manager on that date, he received the email in his Combined work email account. Combined alleges that on that same day, the defendant forwarded the email to his personal email account, and that he used the information to recruit additional employees and agents on behalf of Family Heritage. Combined further alleges that the defendant retained and has used other confidential information that he acquired by virtue of his position, including the company's

---

[1] The complaint indicates that an individual's "appointment" with an insurance company signifies that the individual has been authorized to sell the company's insurance policies. (Compl. para. 34).

5

employee contact and compensation information, since leaving Combined, to target and recruit employees to work for Family Heritage.

Combined alleges that following his departure from Combined, the defendant immediately began using Combined's confidential information and trade secrets to locate Combined employees, and to induce them to sever their relationships with the company. Combined alleges that, as a result of the defendant's substantial recruiting efforts, a significant number of Combined employees have begun selling insurance on behalf of Family Heritage, including employees from the defendant's former sales territory. Likewise, Combined alleges that, less than two years after terminating his employment with Combined, the defendant used the company's confidential information to locate Combined policyholders and induce them to cancel or fail to renew their Combined policies, and to instead purchase Family Heritage policies. Combined further alleges that, as a result of the defendant's efforts, several policyholders within the defendant's former sales territory have cancelled their Combined policies and purchased policies from Family Heritage.

Based on the foregoing allegations, Combined filed this diversity action against the defendant on March 4, 2008. The complaint asserts five claims under Virginia law: (1) breach of contract; (2) tortious interference with contractual and/or prospective business relations; (3) breach of fiduciary duties; (4) misappropriation of trade secrets in violation of the Virginia Uniform Trade Secrets Act, Va. Code §§ 59.1-336-344; and (5) conversion. On April 11, 2008, the defendant moved to dismiss the complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The court held a hearing on the defendant's motion on June 11, 2008. The motion is now fully briefed and ripe for review.

6

**Discussion**

I.     **Motion to Dismiss under Rule 12(b)(1)**

In moving to dismiss Combined's complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the defendant contends that Combined cannot satisfy the amount in controversy requirement for diversity jurisdiction set forth in 28 U.S.C. § 1332. Although Combined alleges, for each of its five counts, that damages "upon information and belief, [are] in excess of $75,000" (Compl. para. 70, 82, 90, 100, 106), the defendant argues that "this speculative statement is not sufficient" (Def.'s Initial Br. pg. 14).

When a defendant contends, in a Rule 12(b)(1) motion, that the complaint fails to allege facts upon which subject matter jurisdiction can be based, the court must assume that all facts alleged in the complaint are true. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Additionally, "[t]he black letter rule 'has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed in 'good faith.'" Choice Hotels Int'l, Inc. v. Shiv Hospitality, LLC, 491 F.3d 171, 176 (4th Cir. 2007) (quoting Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353 (1961)). In deciding whether the stated amount has been asserted in good faith, dismissal is not justified unless it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." Horton, 367 U.S. at 353; see also Shanaghan v. Cahill, 58 F.3d 106, 112 (4th Cir. 1995) ("Unless the claim for an amount over the jurisdictional prerequisite is made in bad faith, or unless it is plain from the complaint that an amount less than the jurisdictional amount is all that is at issue, the district court has jurisdiction over the case.").

7

Here, Combined has alleged damages in excess of the amount in controversy required for the court's exercise of subject matter jurisdiction under 28 U.S.C. § 1332. Because there are no allegations of bad faith, and because it does not appear to a legal certainty that Combined cannot recover the jurisdictional amount, the defendant's motion for dismissal under Rule 12(b)(1) will be denied.

## II.     Motion to Dismiss under Rule 12(b)(6)

The defendant has also moved to dismiss Combined's complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). When reviewing a claim under Rule 12(b)(6), the court must accept all of the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Id. at 244. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-1965 (2007). Assuming the factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level." Id. at 1965.

### A.     Count One

In Count One, Combined asserts a claim for breach of contract. The claim is based, in part, on alleged violations of the restrictive covenants contained in paragraphs 7(a) and (c) of the

8

Contract. In moving to dismiss this claim, the defendant argues that the restrictive covenants in paragraphs 7(a) and (c) are unenforceable for various reasons, and that the breach of contract claim fails "for lack of substance." (Def.'s Reply Br. pg. 5). For the following reasons, the court finds each of the defendant's arguments unpersuasive.

Under Virginia law, a non-competition or non-solicitation agreement will be enforced if it is (1) "narrowly drawn to protect the employer's legitimate business interest," (2) "not unduly burdensome on the employee's ability to earn a living," and (3) "not against public policy." Omniplex World Servs. v. U.S. Investigations Servs., Inc., 618 S.E.2d 340, 342 (Va. 2005). Because such restrictive covenants are disfavored restraints on trade, any ambiguities in the contract are strictly construed against the employer. Simmons v. Miller, 544 S.E.2d 666, 678 (Va. 2001). The issue of whether a non-competition or non-solicitation agreement is enforceable is a question of law. Id. The resolution of this issue requires consideration of the agreement in terms of function, geographic scope, and duration, with these factors considered together. Id. When evaluating the enforceability of a restrictive covenant in the context of a Rule 12(b)(6) motion, the court's review is limited to the complaint and any properly referenced documents, and may not extend to extrinsic factual evidence. See Capitol One Financial Corp. v. Kirkpatrick, 2007 U.S. Dist. LEXIS 56003, at *6-7 (E.D. Va. Aug. 1, 2007) (holding that dismissal under Rule 12(b)(6) was inappropriate where the court could not conclude "from a purely facial analysis" that a non-compete agreement was unreasonable).

As previously stated, the non-competition provision contained in paragraph 7(a) of Contract prohibits the defendant, for a period of two years following the termination of his employment, from selling, or attempting to sell, any form of accident, health, or life insurance

9

issued by any other company to Combined's policyholders. The prohibition on competition is limited geographically to "any geographic areas for which the Executive has been responsible during the two year period before the date the Executive's employment terminates." (Contract para. 7(a)). The non-solicitation provision contained in paragraph 7(c) of the Contract prohibits the defendant, for a period of two years following the termination of his employment, from inducing or attempting to induce Combined's sales agents or employees to leave the company for another insurance company. Like the non-competition provision, the prohibition on solicitation is limited to "any geographic areas for which the Executive has been responsible during the two year period before the date the Executive's employment terminates." (Contract para. 7(c)). The Contract further specifies that, for purposes of paragraph 7, "the counties comprising the [Executive's] Sales Territory shall be those counties reflected in the Schedules of Position and Territory of the Executive for the twenty-four month period immediately preceding the termination of this Contract." (Contract unnumbered pg. 1).

In challenging the validity of these restrictive covenants, the defendant first focuses on their geographic scope. Based on the fact that the term "Sales Territory," for purposes of the restrictive covenants, is not fixed in the contract, but instead based on the territory covered by the defendant at the time of his termination, the defendant argues that the geographic scope of the restrictive covenants is subject to "shifting and expanding," and thus too indefinite to be enforced. (Def.'s Initial Br. pg. 5). While the defendant's argument may find support under Georgia law, on which the defendant relies, see, e.g., Koger Properties v. Adams-Cates Co., 274 S.E.2d 329, 331 (Ga. 1981), the court agrees with Combined that, under Virginia law, such geographic limitations do not render the restrictive covenants facially unenforceable as a matter

of law. To the contrary, the Supreme Court of Virginia has upheld covenants that are virtually indistinguishable from the ones at issue here, where the geographical limitation is defined with reference to the territories in which an employee worked prior to his termination.

For instance, in Paramount Termite Control Co., Inc. v. Rector, 380 S.E.2d 922 (Va. 1989), the defendants signed a two-year non-competition agreement with Paramount that prohibited them from conducting the business of pest control "in any county or counties in the state in which Employee works in which the Employee was assigned during the two (2) years . . . preceding the termination of the Employment Agreement." Paramount, 380 S.E.2d at 924. Likewise, the agreement restricted the defendants from soliciting pest control business from Paramount's customers "in any county or counties in the state in which Employee works, in which the Employee was assigned at any time during the two (2) years . . . preceding the termination of the Employment Agreement." Id. Upon reviewing the geographic scope of the covenants, the Supreme Court of Virginia ultimately held that the agreement was valid, opining that the language of the agreement "clearly and unambiguously prohibits former employees from engaging in the pest control business in any of the counties in which they were assigned by Paramount during the prescribed period," and that since the covenants were "so limited," they were "not geographically overbroad." Id. at 925. See also Blue Ridge Anesthesia and Critical Care, Inc. v. Gidick, 389 S.E. 2d 467, 468-469 (Va. 1990) (holding that a three-year restrictive covenant was valid and enforceable, where the agreement prohibited the employees from competing with the company "within any of the territories serviced by" the employees during their employment); Advanced Marine Enterprises, Inc. v. PRC, Inc., 501 S.E.2d 148, 155 (Va. 1998) (enforcing a restrictive covenant that barred the employee from "rendering competing

11

services to . . . or soliciting any customer . . . for whom Employee performed services while employed by PRC, within 50 miles of a PRC office").

Here, the restrictive covenants at issue apply only to the sales territory covered by the defendant during the 24-month period preceding the termination of his employment, as opposed to Combined's entire market area or any sales territory ever covered by the defendant. In light of the foregoing case law, the court is unable to conclude, at this stage of the litigation, that the restrictive covenants are facially unenforceable as result of their geographic scope.

The court is also unpersuaded by the defendant's second argument, which is based on the defendant's selective reading of the non-solicitation provision in paragraph 7(c). By focusing solely on the following underlined portions of the paragraph, the defendant argues that the provision is overly broad in that it prohibits him from soliciting any sales agent to work for another company, regardless of whether the agent has ever worked for Combined:

> For a period of two years after termination of employment, the Executive covenants and agrees not to, alone or in combination with others, in the geographical areas for which the Executive has been responsible, in any way directly or indirectly, induce or attempt to induce or cause, encourage or assist anyone else to induce or attempt to induce, any sales agent of any kind or any sales employee of any kind of the Company to terminate a relationship with the Company or to sell for or become employed by any other insurance company or insurance agency; provided, however, that the restrictions in this Paragraph (7)(c) shall apply only with respect to any geographical areas for which the Executive has been responsible during the two year period before the date the Executive's employment terminates.

(Contract para. 7(c)) (emphasis added). As Combined emphasizes in its response, the defendant's argument is based solely on the underlined phrases of paragraph 7(c), and ignores what the paragraph actually says: that the employee shall not "induce or attempt to induce, any

12

sales agent of any kind or any sales employee of any kind <u>of the Company</u> to terminate a relationship <u>with the Company</u> or to sell for or become employed by any <u>other</u> insurance company or insurance agency . . . ." (Contract para. 7(c)) (emphasis added). Read in its entirety, paragraph 7(c) clearly prohibits the defendant only from soliciting Combined's sales employees and agents; it does not prohibit him from soliciting employees or agents of other companies.[2]

In his reply brief, the defendant advances an additional challenge to the validity of the non-competition provision in paragraph 7(a). The defendant argues that he does not know the identity of all of Combined's policyholders in the relevant geographic area, and that "Combined did not provide [him] upon his termination any list of policyholders to assist [him] in complying with this non-compete provision." (Def.'s Reply Br. pg. 2). The defendant further argues that he "cannot sell insurance in the same area without fear of 'violating' the contract, because, without a list of Combined policyholders, he cannot know if the door upon which he knocks belongs to a Combine policyholder." (Def.'s Reply Br. pg. 2). Consequently, the defendant contends that the non-competition provision is overly burdensome in practice.

Given the factual nature of this argument, the court agrees with Combined that it is inappropriate for resolution at this stage of the proceedings. Nonetheless, the court notes that Virginia courts have upheld non-competition clauses that are limited to a former employer's actual customers. See, e.g., Foti v. Cook, 263 S.E.2d 430, 433 (Va. 1980) (upholding a restrictive covenant that prohibited a former partner from "offer[ing] to perform or perform services as a Certified Public Accountant or Public Accountant to any client of the partnership"

---

[2] Likewise, the court notes that, contrary to the defendant's assertions in his reply brief, it is clear from a plain reading of the Contract that the restrictive covenant in paragraph 7(c) does not prevent the solicitation of former employees or the solicitation of employees outside of the defendant's sales territory.

for a two-year period); Zuccari, Inc. v. Adams, 42 Va. Cir. 132, 133-134 (Va. Cir. Ct. 1997) (upholding a restrictive covenant that prohibited the former employee from soliciting the former employer's customers for a five-year period, and emphasizing that the former employer "should be able to protect its client base from former employees who may leave its employ but continue in the same line of business").

For these reasons, the court is unable to conclude, from a purely facial analysis, that the restrictive covenants in the Contract are unenforceable as a matter of law. The court also rejects the defendant's alternative argument that Combined's breach of contract claim "fails for lack of substance." (Def.'s Reply Br. pg. 5). The facts alleged in support of Combined's breach of contract claim are plainly sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1965. Assuming the truth of Combined's allegations, as the court must do at this stage of the proceedings, the defendant has clearly undertaken a number of actions that would give rise to a claim for breach of contract. Accordingly, the defendant's motion will be denied with respect to Count I.

## B.     Counts Two, Three, and Five

In Counts Two, Three, and Five, Combined asserts various tort claims under Virginia law. In Count Two, Combined alleges that the defendant tortiously interfered with its contractual and/or prospective business relations. In Count Three, Combined alleges that the defendant breached fiduciary duties that he owed to Combined. In Count Five, Combined asserts a claim for conversion.

In moving to dismiss these claims, the defendant first argues that the claims are precluded under Virginia law, because the only duties allegedly breached by the defendant exist solely by

14

virtue of the Contract. The defendant is correct that the Supreme Court of Virginia has expressed an unwillingness to permit parties to turn every breach of contract into a tort claim. See Richmond Metro. Auth. v. McDevitt Street Bovis, 507 S.E.2d 344, 348 (Va. 1988). Nonetheless, the Supreme Court has recognized that "a party can, in certain circumstances, show both a breach of contract and a tortious breach of duty." Id. The resolution of whether a claim sounds in contract or tort depends upon the source of the duty violated. Id. To avoid turning every breach of contract claim into a tort claim, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." Foreign Mission Bd. v. Wade, 409 S.E.2d 144, 148 (Va. 1991).

Applying these principles, the court is constrained to conclude that the tort claims asserted by Combined do not exist solely by virtue of the Contract, and thus, that they may be pled in conjunction with Combined's breach of contract claim. Turning first to Combined's claim for breach of fiduciary duties, the Supreme Court of Virginia has "long recognized that under the common law an employee, including an employee-at-will, owes a fiduciary duty of loyalty to his employer during his employment," and that this duty encompasses "the more specific duty that the employee not compete with his employer during his employment." Williams v. Dominion Tech. Partners, LLC, 576 S.E.2d 752, 757 (Va. 2003); see also Hilb, Rogal & Hamilton Co. v. DePew, 440 S.E.2d 918, 921 (Va. 1994) (acknowledging "the principle that an employee's fiduciary duty to his employer prohibits the employee from acting in a manner adverse to his employer's interest"). The Supreme Court has further recognized that certain conduct by an employee during the term of his employment will clearly constitute a breach of the duty of loyalty. Williams, 576 S.E.2d at 758.

15

> Principally, an employee must not have misappropriated trade
> secrets, misused confidential information, [or] solicited an
> employer's clients or other employees prior to termination of
> employment. While this list is by no means exhaustive, it is
> indicative of the types of conduct by an employee that <u>the common
> law</u> will not condone in an employment relationship.

<u>Id.</u> (emphasis added) (internal citation and quotation marks omitted). Based on the foregoing

case law, the court concludes that Combined's claim for breach of fiduciary duties is based on

duties that exist under the common law as a result of the parties' employment relationship,

notwithstanding the presence of any contract, and thus, that the claim is actionable in tort.[3]

Stated succinctly, inasmuch as it is clear that Virginia law recognizes the tort of breach of

fiduciary duties in the employment context, and inasmuch as it is clear that almost all

employment relationships are founded on contract, it is abundantly clear that the Supreme Court

of Virginia did not intend to render the two causes of action mutually exclusive.

---

[3] In reaching this decision, the court notes that it is cognizant of the Supreme Court of Virginia's recent decision in <u>Augusta Mut. Ins. Co. v. Mason</u>, 645 S.E.2d 290 (Va. 2007). In that case, Lee-Curtis Insurance Services, Inc. ("Lee-Curtis") and its employee, Herbert L. Jones, Jr. ("Jones"), acted as agents for Augusta Mutual Insurance Company ("Augusta Mutual"), pursuant to an agency agreement. <u>Augusta Mut.</u>, 645 S.E.2d at 292 n.2. After a couple sued Augusta Mutual for wrongful denial of coverage, Augusta Mutual filed a third-party motion for judgment against Lee-Curtis and Jones, asserting several claims, including a claim for breach of fiduciary duties. <u>Id.</u> at 291-292. The Supreme Court ultimately held that Augusta Mutual's breach of fiduciary duties claim was without merit, reasoning that "[a]ny fiduciary duty allegedly breached . . . existed solely because of the contractual relationship between Augusta Mutual and Lee-Curtis, and in turn, its employee, Jones." <u>Id.</u> at 295. Stated differently, "[b]ut for the existence of the Agency Agreement, neither Jones nor Lee-Curtis would have owed any fiduciary duty to Augusta Mutual." <u>Id.</u>

Unlike Lee-Curtis and Jones, who essentially worked as independent contractors for Augusta Mutual, the defendant in this case worked as an <u>employee</u> for Combined for over 21 years. As previously discussed, the common law imposes a number of fiduciary duties on an employee as a result of the employee's relationship with his employer. <u>See</u> <u>Williams</u>, <u>supra</u>. Thus, while the defendant's employment with Combined was subject to various agreements over the course of his employment, including the Contract at issue, the court is unable to conclude, at this stage of the litigation, that the Contract was the sole source of any fiduciary duties allegedly owed to Combined by the defendant. <u>But see</u> <u>Best Medical Int'l, Inc. v. Wittmer</u>, 73 Va. Cir. 504, 506 n. 1 (Va. Cir. Ct. 2007) (noting that a former employee's duties appeared to arise only through contracts that he entered into with his former employer, and thus, that a claim for breach of fiduciary duties may not be valid in light of <u>Augusta Mut.</u>).

16

The court also concludes that Combined's claims for conversion and tortious interference may be pled in conjunction with its breach of contract claim. As the United States District Court for the Eastern District of Virginia explained in Hewlette v. Hovis, 318 F. Supp. 2d 332, 337 (E.D. Va. 2004), "the duty not to convert the property of another for one's own purposes" exists in the absence of any contract, and thus provides the basis for an "independent tort from the contract claims" arising out of the parties' relationship. Likewise, "a tort action exists against 'one who intentionally interferes with another's contractual rights,'" Hilb, Rogal & Hamilton Co., 440 S.E.2d at 921 (quoting Duggin v. Adams, 360 S.E.2d 832, 835 (Va. 1987)), and may proceed in conjunction with a cause of action for breach of contract. See Id. (holding that, in certain circumstances, "an employee's breach of his/her contractual duties may constitute the "improper method" necessary to sustain a cause of action for intentional interference with an employer's at-will contract and for conspiracy to interfere with that contract"). Accordingly, Combined is not limited to pursuing contractual theories of relief for the defendant's alleged misconduct, and the defendant's motion to dismiss will be denied with respect to this issue.

The defendant also argues that Combined's claims for tortious interference, breach of fiduciary duties, and conversion are preempted by the Virginia Uniform Trade Secrets Act ("Trade Secrets Act"). The relevant section of the Trade Secrets Act provides as follows:

> A. Except as provided in subsection B of this section, this chapter displaces conflicting tort, restitutionary, and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret.
>
> B. This chapter does not affect:
>
> > 1. Contractual remedies whether or not based upon misappropriation of a trade secret; or

17

2. Other civil remedies that are not based upon misappropriation of a trade secret; or

3. Criminal remedies, whether or not based upon misappropriation of a trade secret.

Va. Code § 59.1-341 (emphasis added).

While the Supreme Court of Virginia has not interpreted the Trade Secret Act's preemption provision, the United States District Court for the Eastern District of Virginia has emphasized that "[t]he plain language of the preemption provision indicates that the law was intended to prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret." Smithfield Ham and Prods. Co., Inc. v. Portion Pac, Inc., 905 F. Supp. 3346, 348 (E.D. Va. 1995). In Smithfield Ham, the Court reviewed cases from other federal courts interpreting "nearly identical versions of the uniform law in other states," and noted that courts had concluded that "the preemption provision is intended to preclude only those common law claims that are premised entirely on a claim for the misappropriation of a trade secret." Smithfield Ham, 905 F. Supp. at 348 (emphasis in original). In light of those cases, the Court held that, in order to survive summary judgment, "a plaintiff must be able to show that the distinct theories of relief sought are supported by facts unrelated to the misappropriation of the trade secret." Id. at 349.

Relying on the standard adopted in Smithfield Ham, which this court finds persuasive, the court agrees with Combined that its claims for tortious interference with contractual and/or prospective business relations and breach of fiduciary duties are supported by allegations separate and apart from the defendant's alleged misappropriation of trade secrets. Additionally,

18

as Combined explains in its surreply, the damages that Combined seeks for misappropriation of trade secrets under the Trade Secrets Act are significantly more narrow than those sought in conjunction with its claims for tortious interference and breach of fiduciary duties. Combined's claim under the Trade Secrets Act is based on the misappropriation of particular business documents, such as the list of former Combined employees targeted for rehire. Although Combined cites the defendant's misappropriation of trade secrets in support of its claims for tortious interference and breach of fiduciary duties, neither these claims, nor the corresponding damages, arise solely from the defendant's alleged misuse of such documents.[4] Accordingly, because Combined's claims for tortious interference and breach of fiduciary duties are not entirely dependent upon the defendant's alleged misappropriation of trade secrets, the court concludes that these claims, as pled, are not preempted by the Act.

Unlike Combined's claims for tortious interference and breach of fiduciary duties, Combined's conversion claim is premised solely on the misappropriation of confidential, proprietary information. Nonetheless, because the determination of whether such information qualifies as a trade secret presents a question of fact, MicroStrategy Inc. v. Li, 601 S.E.2d 580, 589 (Va. 2004), and because the defendant specifically disputes whether the information at issue is "proprietary to Combined" (Def.'s Reply Br. pg. 8), the court declines to conclude, at this stage of the litigation, that Combined's conversion claim is preempted by the Trade Secrets Act. See

---

[4] For instance, both claims are based, in part, on the allegation that the defendant solicited his co-workers to leave Combined to work for Family Heritage. As Combined emphasizes in its surreply, Combined does not allege that the identities of the defendant's co-workers were uncovered solely through the misappropriation of trade secrets. Thus, while the defendant's solicitation of co-workers, without the use of trade secrets, may give rise to damages under common law theories, such misconduct would not give rise to a claim, or any corresponding damages, under the Trade Secrets Act.

19

Stone Castle Financial, Inc. v. Friedman, Billings, Ramsey & Co., 191 F. Supp. 2d 652, 659 (E.D. Va. 2002) ("The plain meaning of the statute, coupled with decisions interpreting similar preemption provisions in the context of a motion to dismiss, make it apparent that, unless it can be clearly discerned that the information in question constitutes a trade secret, the Court cannot dismiss alternative theories of relief as preempted by the VUTSA."); Int'l Paper Co. v. Gilliam, 63 Va. Cir. 485, 490 (Va. Cir. Ct. 2003) ("The VUSTA does not preempt alternative tort recovery unless it is clear that the price list falls within the confines of the Act.").

The defendant's final challenge relates to the merits of Combined's conversion claim.[5] Under Virginia law, "[a] person is liable for conversion for the wrongful exercise or assumption of authority over another's goods, depriving the owner of their possession, or any act of dominion wrongfully exerted over property in denial of, or inconsistent with, the owner's rights." Simmons v. Miller, 544 S.E.2d 666, 679 (Va. 2001) (emphasis added).

To support its claim for conversion, Combined alleges that the defendant forwarded a confidential and proprietary list of persons targeted for recruitment by Combined to his personal email account, and that he then used this information to solicit people on behalf of Family Heritage. Combined further alleges that the defendant did not have the authority to convert this information to his personal use, and that such use of the list was in contravention of Combined's right of ownership in the document.

---

[5] The court notes that the defendant's reply brief contains a cursory argument that Combined's tortious interference claim is based on "bald assertion[s]." (Def.'s Reply Br. pg. 8). To the extent this argument challenges the sufficiency of the complaint with respect to this claim, the court concludes that the argument is without merit. The facts alleged to support Combined's tortious interference claim are clearly sufficient to survive the defendant's Rule 12(b)(6) motion.

20

In moving to dismiss this claim, the defendant argues that the claim is without merit because the property allegedly converted -- a confidential list sent to the defendant's email account -- is intangible. While a cause of action for conversion generally applies only to tangible property, "courts have recognized the tort of conversion in cases where intangible property rights arise from or are merged with a document." United Leasing Corp. v. Thrift Ins. Corp., 440 S.E.2d 902, 906 (Va. 1994). Consequently, the court agrees with Combined that its conversion claim does not fail merely because the property at issue is "an electronic version of [the] list rather than a hard copy." (Pl.'s Resp. pg. 9). Moreover, relying on the standard set forth in Simmons v. Miller, supra, the court concludes that Combined's allegations are sufficient to state a claim for conversion under Virginia law.

### Conclusion

For the reasons stated, the defendant's motion to dismiss will be denied. The Clerk is directed to send certified copies of this opinion and the accompanying order to all counsel of record.

ENTER: This 11ᵗʰ day of August, 2008.

_____
United States District Judge